E-FILED
Friday, 15 August, 2014  10:13:01 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANTHONY MCCLURE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 12-CV-3116 |
| | ) | |
| LORI RUTH, CHRIS SIEVERS, | ) | |
| and KARIN O'HARA, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and currently incarcerated in Hill Correctional Center, pursues claims arising from alleged interference with his incoming legal mail during his incarceration in Western Illinois Correctional Center, in particular, alleged interference with correspondence from the Uptown People's Law Clinic received by the prison on February 27, 2012.

On December 31, 2013, Defendants' motion for summary judgment was denied with leave to renew.  Defendants move for summary judgment

again, this time attaching affidavits setting forth the mail the Plaintiff sent and received during the relevant time frame, as well as other evidence which shows that the alleged failure to deliver to February 27th letter was an isolated occurrence. Because the alleged failure to deliver the piece of mail was an isolated event, no constitutional violation occurred, and summary judgment must be granted to Defendants.

ANALYSIS

The Court repeats much of its prior opinion (d/e 62) here verbatim.

On December 30, 2011, Plaintiff sent a letter to the Uptown People's Law Center, seeking legal representation in a pending civil rights case in the Southern District of Illinois and an Illinois Court of Claims case. On February 3, 2012, Plaintiff received a response from the Center asking for more information in order to vet Plaintiff's cases to possible attorneys. Plaintiff mailed the requested information to the Center on February 7, 2012. Plaintiff followed up with another letter to the Center on February 10, 2012.

Construing inferences in Plaintiff's favor, on February 27, 2012, the

prison mail room received mail from the Center addressed to Plaintiff. The general procedure for handling legal mail was to log the mail, copy the face of the envelope, send the mail to security staff for delivery to the inmate, and receive back from security staff the copy of the envelope with the inmate's signature indicating that he received the mail.

The February 27th mail from the Center to Plaintiff was logged, with Defendant Roth signing her initials that the mail had been x-rayed for contraband. However, according to Plaintiff, this mail was never delivered to him. The piece of mail is not in the record. Strangely, according to a prisoner rights coordinator at Uptown People's Law Center, the Center has no record of sending anything to Plaintiff in February 2012. (Nelson Aff., para 7.) The Center's records match up with the prison records, except for the purported piece of mail from the Center on February 27, 2012. The Court assumes for purposes of this order that the Center did send mail to Plaintiff on or around February 27, 2012, even though the Center does not have a record of that correspondence.

Defendants do not know what happened to the February 27th piece

of mail from the Center after it was logged, asserting that, at most, the failure to deliver it was an isolated instance of negligence. Plaintiff contends that a more sinister inference of intentional destruction arises because, when Plaintiff first asked for a copy of his legal mail log, the log he received had been altered: the record of the Center's mail received by the prison on February 27 had been erased. None of the defendants have any idea why Plaintiff's legal mail log would have been altered and they deny altering any records.

According to Defendants' affidavits, Plaintiff received and sent over 52 pieces of mail between November 5, 2010, and April 18, 2012. Western Illinois Correctional Center receives about 600 pieces of incoming mail per day, and also deals with 400 pieces of outgoing mail per day. (Defs.' Undisputed Facts 13-14.)

The Court originally denied summary judgment because more evidence was needed on whether the purported failure to deliver this one piece of mail was an isolated occurrence or a pattern. That evidence has now been provided: the occurrence was isolated. An isolated incidence

of mail interference is not serious enough to arise to a constitutional violation. *See* Sizemore v. Williford, 829 F.2d 608 (7th Cir. 1987)(inmate's allegation of intentional and repeated withholding of reading material stated First Amendment claim, contrasting with "isolated instances of loss or theft."); Kincaid v. Vail, 969 F.2d 594 (7th Cir. 1992)(Where inmate presented no evidence of defendants' motive or intent, mistake by clerk's office was an isolated act of negligence not actionable under the Constitution.); Willis v. Washington, 172 F.3d 54 (7th Cir. 1999)(unpublished)(one-time destruction of box placed in prison mail containing correspondence would not allow a reasonable juror to "infer . . . an ongoing pattern of mail tampering which rises to the level of a constitutional violation). Additionally, Plaintiff has no evidence that he suffered any damage from this isolated event. His Court of Claims case is still pending, and his case in the Southern District of Illinois was dismissed for failure to state a claim in July, 2012, a ruling which Plaintiff did not appeal. If Plaintiff had suffered actual prejudice in a pending, meritorious case, the outcome might be different, but that did not happen here.

In sum, not every wrong by a state employee amounts to the violation of a federal constitutional right. The alleged wrong here, even if it occurred, was de minimis in nature and, therefore, did not violate Plaintiff's constitutional rights. See Rapier v. Harris, 172 F.3d 999, n. 4 ("De minimis burdens on the free exercise of religion are not of constitutional dimension.")(citing Owen v. Shuler, 466 F.Supp. 5, 7 (N.D.Ind.1977) ("de minimis delays in mail delivery are unavoidable in any large institution and do not implicate the Constitution as long as they are not unreasonable"). Summary judgment must, therefore, be granted to Defendants.

IT IS THEREFORE ORDERED:

1) Plaintiff's motion for an extension to file his response to the summary judgment motion is granted (71). Plaintiff has filed his response, and the Court has considered Plaintiff's response.

2) Defendants' motion for summary judgment is granted (d/e 69). The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All other pending motions are denied as moot (73,

74), and this case is terminated, with the parties to bear their own costs. All deadlines and settings on the Court's calendar are vacated.

  3) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal. See Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTERED: August 15, 2014

FOR THE COURT:

        <u>s/Sue E. Myerscough</u>
        SUE E. MYERSCOUGH
      UNITED STATES DISTRICT JUDGE